Bridgeford & Co. v. J. S. Simonds et als.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

BRIDGEFORD & Co. *v.* J. S. SIMONDS et als.

Action against the drawer and acceptors of a draft must be made within a reasonable time, otherwise they will be discharged.
Fraud is never presumed. It must be alleged and strictly proved.

APPEAL from the Fifth District Court of New Orleans, *Leaumont,* J. *B. Egan* and *W. F. Mills,* for defandants and appellants.

*Eggleston & Hart, for plaintiffs.*—Simonds took exceptions to the introduction of the draft, that he was no party to it, and that there was no proof that Cocke, who drew the draft for plaintiffs, had authority to do so, and that it is not admissible against him.   The draft was drawn by Cocke, and accepted by C. & B., which was an affirmance of his authority to draw, and the institution of this suit is a full recognition of his authority

by the plaintiffs. Besides, the respective answers of C. & B. and S. contain a tacit admission of his authority, and the signatures are admitted, for as much as there is no special denial. Again, plaintiffs had to begin somewhere. They could not heap up all their evidence and throw it upon the Court at one and the same moment. If they failed to prove the indebtment of C. & B. to them, they would lose the suit; but if they proved their demand, they would have to go further, and show fraud, etc., on the part of S. to hold him liable.

His answers, as regards Simonds, were rejected by the Court, and plaintiffs excepted.

The answers, we think, should have been received as evidence of simulation against S. It cannot be considered as offering one partner as a witness for or against another, in a matter where both are jointly concerned, and to throw a part or the entire burden of the debt upon one of the partners as such. But the object of the evidence is to establish and fix upon a wrong-doer the charge of fraud, the legal consequence of which is to subject certain property of the latter to the payment of a debt. It is not to fix his liability, as accruing in virtue of his social connection with the witness, but that the liability was incurred independently, and in spite of or above such industrial connexion. In other words, that the responsibility sprung from a wrongful act of the party sued. The offence or quasi-offence of S. occasioned the responsibility, and not his social relations, or any act growing out of them towards the witness. *Rochdelle* v. *Musson*, 3 M. Rep. 86.

Again: The effect of this testimony is not to release C. & B. from their obligation to pay the draft which they accepted, for they are irrevocably obliged by their acceptance; nor is it to fasten on S. a sole or part responsibility for the acceptance in his capacity as partner. The petition charges him as sole owner, and as having been the recipient and beneficiary of the goods sold and delivered. If either was the fact, and he only used his co-defendants, C. & B.'s names as mere prets noms, to disguise his fraud and enable him to acquire the goods, and convert them to his own use, then he committed a fraud on plaintiff, and a coadjutor in the fraud is a competent witness. It was proposed to prove that C. & B. were nominal owners, and S. was the real one of the store; that the pretended sale was a sham, and had no legal validity, and to hold S. as well as C. & B., all accomplices in solido. There was no intention to prove a partnership, nor to prove the interest therein of S., nor to establish any right, duty or obligation pertaining to a partnership.

There was no change of possession after the sale, but the possession was retained by S. This was a fraud. 7 Ann. Rep. 124; 7 do. 614. A joint possession by S. & C. & B. would be fraudulent, for in such a case the delivery would not be complete. *Wardell* v. *Smith*, 1 Camp. 333; *Cadogan* v. *Kennett*, Cowper's Rep. 432; *Jannan* v. *Wolleton*, 3 Tenn. Rep. 618; 7 Tenn. Rep. 82; *Da..uels* v. *Smith*, 3 M. R. 225, 3 N. S. 24, 2 ib. 13;

6 Toullier No. 341, et seq., 9 ib. No. 164. And the party asserting the validity of a sale must prove it. 12 Rob. 95 ; 10 Rob. 369.

When a sale of personal property has been made, a delivery of the property to the vendor is essential to its perfection, so far as third persons are concerned. C. C. 2456, 2243, 1917 ; 4 Rob. 435 ; 1 Ann. 59 ; 3 Mart. 222, 3, 4.

There was no list of the, articles sold made out, or valuation of them. 7 Ann. 124, 5. The frequent change of the name of the owners and style of the firm, painted on the store, the possession of the books all the time by S., and the refusal to produce them in Court when ordered, are all so many badges of fraud and simulation that must ensure the annulment of the sale.

HOWELL, J. This is a suit by the payees against the drawer and acceptors of a draft, dated April 1st, 1861, and payable seven months after date; on which the lower Court gave judgment against the defendants in solido; from which judgment Simonds, the drawer, appealed.

The appellant is discharged as drawer, for want of timely presentment and protest. It is a matter of history, that communication with Louisville, Kentucky, plaintiffs' residence, was restored in the summer of 1862; and there is no proof of a demand or presentment before the institution of this suit in April, 1864. Action was not taken within reasonable time. Story on Bills, § 365.

Plaintiffs aver and contend, however, that Simonds, the drawer, was really a partner in the firm of Colton & Baldwin, the acceptors; that the sale, on 1st July, 1860, of his interest in the preëxisting firm of J. S. Simonds & Co., to Baldwin, an employee, was a simulation and a fraud upon his creditors, and that, consequently, he is liable for the amount of the draft.

The evidence does not establish a simulation. There was, according to the proofs in the record, an actual sale and delivery. Simonds withdrew from the establishment, left it to the control of the new firm, and notified plaintiffs of the change, One witness, an employee, states that Simonds continued in the store the same as before the sale to Baldwin; but his testimony is outweighed by that of three others, who had equal opportunities for knowing the true state of affairs. No motive is shown in Simonds for making a simulated or fraudulent sale in 1860, or for concealing his interest in the new firm. Fraud is not presumed; and it is incumbent on plaintiffs, whose claim originated after the sale thus attacked, to prove, *with legal certainty*, the allegations upon which they seek to make him responsible to them. We think they have failed to show that he was a member of the firm, with whom they say they contracted, and who are bound to them as acceptors. The preponderance of evidence is in favor of appellant.

It is therefore ordered, that the judgment of the District Court against the appellant, J. S. Simonds, be reversed, and that there be judgment in his favor, with costs in both Courts.